**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 29, 2015**

# In the Court of Appeals of Georgia

A15A0312. LEE v. THE STATE.                                        JE-012C

ELLINGTON, Presiding Judge.

A Fulton County jury found Kevin Lee guilty of two counts of armed robbery, OCGA § 16-8-41; one count of aggravated assault with intent to rob, OCGA § 16-5-21 (a) (1) (2007); and one count of possession of a firearm during commission of a felony, OCGA § 16-11-106. On appeal, Lee claims that the trial court erred in admitting the victims' pre-trial and in-court identifications. For the reasons set forth below, we find no merit in this claim.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that around 6:00 p.m. on July 13, 2007, Lee and an accomplice robbed two college students. R. M. testified that he was in his Fulton County home working on a paper

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

when he heard the door chime. Two men, whom the victims later identified as Lee and Larry Brown, walked into the house and instructed R. M., "[y]ou already know what it is, get on the floor." When Brown pulled out a gun, R. M. got on the floor.

The second victim, C. M., who had been in his bedroom, walked out to find the two men, one of whom had a gun pointed at R. M.'s head. C. M. ran to retrieve his firearm, but he slipped on the floor as Brown pursued him. Brown fired a shot, which missed C. M. He then struck C. M. in the back of the head with his gun and dragged him to the living room, where he was forced to lie on the floor with R. M.

After asking C. M. and R. M. if they had any valuables, Brown and Lee took the victims to C. M.'s room and had them lie under a mattress. As C. M. was taken to his room, Brown gave the gun to Lee, who held it on R. M. Brown and Lee ransacked the house and ultimately took the victims' cell phones and the keys to C. M.'s truck. Meanwhile, the third resident of the house was hiding upstairs in the bathroom with his girlfriend, who called the police. When Brown and Lee realized that the police had arrived, they fled out the back door of the residence.

When the responding officers arrived, they saw two men running out of the back of the house. One officer chased the men while the other officer spoke with the victims, who gave him a description of the suspects. The officer who chased the

2

robbers almost caught up with them, but they jumped off of a concrete wall and ran in different directions. The officer pursued one suspect, later identified as Lee, and, with the assistance of a back-up officer, arrested him in the parking lot of nearby restaurant. Brown was apprehended a few minutes later by other officers. They also recovered the black handgun that Brown had hidden in the nearby brush.

The police brought Lee back to the victims' home. As he was sitting in the back of the police car, C. M. and R. M. identified Lee as one of the robbers. The police also recovered two cell phones and a set of car keys from Lee, and C. M. and R. M. confirmed that the items belonged to them. The victims were then taken to see Brown, who had been injured jumping off the wall, and they identified him as the other robber. At trial, both C. M. and R. M. made an in-court identification of Lee as the man who entered their home and had held the gun on R. M.

Brown testified at trial as a witness for the State. According to Brown, he and Lee initially went to the victims' home to buy marijuana, but instead they robbed them. Brown said that he shot his gun at the floor after C. M. started to run, that he pulled C. M. into the living room with R. M., and that he then gave the firearm to Lee to hold while he searched the house for money. According to Brown, he ordered the victims under the bed, after which he saw the police and both he and Lee fled.

After he was indicted, Lee filed a motion to suppress his pre-trial and in-court identifications. The trial court denied Lee's motion to suppress R. M.'s identification testimony, but it granted the motion to suppress pre-trial identification evidence from C. M. because the State was unable to produce C. M. at the hearing to offer testimony.

Lee contends that the trial court erred in admitting his pre-trial and in-court identifications because the pre-trial identification procedure, in which Lee was presented to the victims while in the back seat of a squad car, was impermissibly suggestive and thereby created a substantial likelihood of irreparable misidentification. A one-on-one showup is suggestive, as the State concedes, although not necessarily impermissible. See *Rogers v. State*, 202 Ga. App. 595, 596 (1) (415 SE2d 49) (1992) (finding that "[o]ur appellate courts have consistently upheld the admission of in-court identifications when prior one-on-one showups are reasonably and fairly conducted at or near the time of the offense") (citation and punctuation omitted). But even if we

> assum[e] without deciding that the circumstances surrounding [Lee's] identification rendered the showup impermissibly suggestive, the evidence is inadmissible only if under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.

4

(Citations and punctuation omitted.) *Butler v. State*, 290 Ga. 412, 415 (3) (721 SE2d 876) (2012). In determining whether there was a substantial likelihood of irreparable misidentification, factors to be considered include:

> (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation.

(Citations omitted.) *McBride v. State*, 291 Ga. 593, 594-595 (2) (732 SE2d 757) (2012). The ultimate issue is "whether under the totality of the circumstances, the identification is reliable." (Citations and punctuation omitted.) Id. at 595 (2). "[I]n evaluating these factors, the trial court is the trier of fact and must judge the credibility of the witnesses and the weight and conflict in the evidence. Where evidence supports the trial court's ruling, we will not disturb that ruling." (Footnote omitted.) *Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000).

5

With respect to R. M., the evidence[2] showed that he had the opportunity to view Lee in close proximity and in good light. His attention was focused on Lee as one of the two robbers. His identification of Lee, which occurred within fifteen minutes after Lee fled the scene, was immediate and certain. R. M.'s description of Lee to the police, which was that he had a short haircut and was wearing all black, including black gloves and a short haircut, was somewhat general. However, Lee was spotted by officers fleeing through the backyard of the victims' house. The police pursued him until he was captured. Therefore, he was not brought to the showup on the sole basis that he matched a generalized description of a man wearing black clothes. Compare *Towns v. State*, 136 Ga. App. 467, 468-469 (1) (221 SE2d 631) (1975) (Where the victim, who had little opportunity to observe his attacker, described his assailant as a man wearing a toboggan hat, and he was brought to the police station the next day and shown only the defendant, who was wearing a toboggan hat and had previously been arrested for speeding, the circumstances surrounding the showup were conducive to irreparable misidentification.).

---

[2] "In determining whether the trial court erred in denying the motion to suppress identification testimony, this court may consider the evidence adduced both at the suppression hearing and at trial." (Citation and punctuation omitted.) *Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005).

6

Considering the totality of circumstances, the evidence supports the trial court's finding that R. M.'s identification testimony was admissible notwithstanding that the showup was suggestive. See *Jones v. State*, 273 Ga. at 216 (2) (Although the trial court found the pre-trial identification to be impermissibly suggestive, the trial court did not err in concluding there was no substantial likelihood of irreparable misidentification where witnesses had an opportunity to view the defendant under a bright street light, gave consistent descriptions to police, were certain of their identifications, and the initial identification occurred shortly after the crimes.); *Tiggs v. State*, 287 Ga. App. 291, 292-293 (a) (651 SE2d 209) (2007) (The victim's identification of the victim was admissible notwithstanding the showup, as the victim had ample opportunity to view the defendant, gave a substantially correct description, and demonstrated a high degree of certainty.); *Johnson v. State*, 209 Ga. App. 632, 633-634 (434 SE2d 169) (1993) (On-the-scene confrontation, based on near immediate arrest, using description of the victim, supported trial court's finding that there was no substantial likelihood of irreparable identification.).

Unlike in the case of R. M.'s testimony, Lee obtained a ruling that evidence of C. M.'s pre-trial identification would be suppressed. Thus, as to C.M., Lee argues both that the showup led to a substantial likelihood of irreparable misidentification

and that the trial court erred in allowing C. M.'s identification testimony after ruling that the testimony would not be allowed.

Although the trial court granted Lee's motion to suppress as to C. M., it did so only with respect to pre-trial identification evidence[3] and only because the State had failed to produce C. M. to offer testimony at the hearing. To the extent that C. M. sought to suppress C. M.'s in-court identification, the trial court made no ruling, nor was it required to do so. See *Clark v. State*, 279 Ga. at 245 (4) ("The trial court was not required to hold any pre-trial hearing" on the motion to suppress.); *Moore v. State*, 215 Ga. App. 626 (1) (451 SE2d 534) (1994) ("[I]t has repeatedly been held that the trial court is not required to entertain a pre-trial motion to suppress identification testimony.") (citation and punctuation omitted). As Lee "did not object when [C. M.] identified him in court as the [robber] . . . , he has waived the right to object to the in-court identification[]." *Barber v. State*, 236 Ga. App. 294, 297 (2) (512 SE2d 48) (1999).

C. M.'s pre-trial identification was subject to the motion to suppress. However, the trial court did not find, and Lee does not show, that the evidence of C. M.'s pre-

---

[3] The trial court's written order expressly extends only to the pre-trial identification, and the trial court clarified that this would be the case during the hearing.

trial identification infringed on Lee's constitutional right to due process. See generally *Neil v. Biggers*, 409 U.S. 188, 196 (III) (93 SCt 375, 34 LE2d 401) (1972) (considering "the scope of due process protection against the admission of evidence deriving from suggestive identification procedures"). The circumstances leading to C. M.'s identification of Lee are substantially the same as that of R. M., which, as we found *supra*, were admissible notwithstanding the suggestive nature of the showup. The evidence at trial showed that C. M. had an ample opportunity to view Lee, his level of attentiveness to the persons who invaded his home was high, he identified Lee "instantly" at the showup, he gave a description of Lee to the police that was consistent with R. M.'s, and the length of time between the crime and the confrontation was minimal.

Further, even if we assume, without deciding, that, as in the case of a previously granted motion in limine,[4] Lee was not required to object when the State elicited evidence of C. M.'s pre-trial identification, Lee did not simply fail to object. Rather, Lee argued to the jury that the showup identifications were suggestive in opening argument and then cross-examined C. M. at length about the pre-trial

[4] See generally *Reno v. Reno*, 249 Ga. 855, 856 (295 SE2d 94) (1982) (Where a motion in limine to suppress evidence is granted, the movant need not object when evidence encompassed by the motion is nevertheless introduced at trial.).

identification, establishing details such as that Lee had been in a cage within the police car and handcuffed. "A defendant who brings out the same evidence to which he objects cannot be heard to complain." (Punctuation and footnote omitted.) *Helton v. State*, 268 Ga. App. 430, 432 (2) (602 SE2d 198) (2004). If Lee could complain that the State failed to comply with the order granting the motion to suppress, he cannot show prejudice because the other evidence of his identity was overwhelming. See *Snider v. State*, 200 Ga. App. 12, 13 (1) (406 SE2d 542) (1991) (If testimony as to the identification of the defendant at the showup should not have been allowed, any error was harmless in the context of the remaining identification testimony.). Accordingly, Lee shows no grounds for reversal.

*Judgment affirmed. Dillard and McFadden, JJ., concur*.